UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIANNE SHIFF,

    Plaintiff,                                                 Civil Action No. 18-CV-12302

vs.                                                         HON. BERNARD A. FRIEDMAN

IMAGEMASTER PRINTING LLC
and ALBERT RODRIGUEZ,

    Defendants.
_____/

**OPINION AND ORDER
DENYING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is presently before the Court on the parties' cross motions for summary judgment [docket entries 43 and 45]. Response and reply briefs have been filed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

This is an age discrimination and ERISA rights case. Plaintiff Marianne Shiff worked for defendant ImageMaster Printing LLC ("ImageMaster") from 2001 until she resigned in February 2018. Plaintiff alleges that ImageMaster's owner and manager, defendant Albert Rodriguez, discriminated against her based on her age (57 when she resigned) by reducing her pay by 40% with the explanation that "she was approaching the mandatory retirement age and he needed to use part of her salary to pay for her replacement." Am. Compl. ¶ 39. Rodriguez allegedly made ageist comments to plaintiff, including that "he did not want her to hire 'old' people, anyone over the age of 50 [because] . . . he considered older people to be 'forgetful' and that he did not want to hire them." *Id.* ¶ 17. In 2016, Rodriguez allegedly "informed his employees at a staff meeting that he was instituting a 'mandatory retirement age' of 59 ½ years, and that he had selected this age because

that is when one can begin drawing on a 401(k)." *Id.* ¶ 21. Plaintiff further alleges that when she complained to Rodriguez that his mandatory retirement policy was unlawful, "he acknowledged the policy was 'probably illegal, but until someone calls me out on it, that's what we're doing.'" *Id.* ¶ 28. Based on these and other allegations, plaintiff asserts age discrimination, retaliation, and hostile work environment claims against defendants under the Elliott-Larsen Civil Rights Act and the Age Discrimination in Employment Act.

Additionally, plaintiff alleges that defendants violated her rights under the Employee Retirement Income Security Act ("ERISA") in the way they managed the 401(k) plan they provided to their employees. Specifically, plaintiff alleges that ImageMaster (the plan's administrator) and Rodriguez (the plan trustee) violated various ERISA provisions by providing services to the plan, dealing with plan assets "in their own interest," "moving funds without advance notice to participants, engaging in high-risk option trading, and charging excessive fees to participants." *Id.* ¶¶ 98, 99, 101.

Defendants seek summary judgment on all of plaintiff's claims, while plaintiff seeks summary judgment on her ERISA claims and on her claim that defendant's mandatory retirement policy is unlawful.

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Id.* (citing *Celotex Corp. v. Catrett*, 477

> U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In
> response, the nonmoving party must present "significant probative
> evidence" that will reveal that there is more than "some metaphysical
> doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8
> F.3d 335, 340 (6th Cir. 1993). The mere existence of a scintilla of
> evidence in support of the nonmovant's position will not suffice to
> avoid summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

*Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

Having reviewed the parties' briefs and exhibits in this matter, the Court concludes that neither party is entitled to summary judgment on any of plaintiff's claims.

Regarding the ERISA claim, plaintiff has shown that defendants breached their duties because Rodriguez collected "administrative fees" from plan assets and deposited these fees into ImageMaster's corporate bank account. Rodriguez, as a plan fiduciary, violated 29 U.S.C. § 1106(b)(1) by engaging in such self-dealing. *See Barboza v. Cal. Ass'n of Prof'l Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015); *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 868 (6th Cir. 2013). Even if, as Rodriguez contends, these fees were used for the benefit of the plan participants by funding ImageMaster's matching contributions, "[s]uch conduct constitutes a per se violation of § 1006(b)(1)." *Barboza*, 799 F.3d at 1269.

However, summary judgment cannot be granted for either party on this claim because defendants have not calculated plaintiff's damages correctly and plaintiff has not calculated them at all. On August 1, 2019, defendants refunded $31,166.68 to plaintiff under a cover letter from defendant Rodriguez who indicated that this amount was due because "certain administrative fees previously charged to your Plan account for investment management services provided in the 2015, 2016, and 2017 Plan years have been reconciled." Defs.' Summ. J. Ex. 13. Elsewhere defendants indicate that the administrative fees deducted from plaintiff's account amounted to $27,953.60.

3

Defs.' Summ. J. Br. at 23. The difference between these figures, $3,213.08, presumably constitutes the "applicable lost earnings," *id.*, defendants believe plaintiff is owed. Yet defendants do not explain how they calculated this figure.[1] Nor does this figure appear to be reasonable, given that "the Plan saw an annual return of 11.64% [in 2015]; a 23.9% return . . . in 2016; a 34.76% return . . . in 2017; and a 15.07% return . . . in 2018." *Id.* at 29. Plaintiff is entitled to be made whole, and the correct measure of plaintiff's damages is her actual, not estimated, lost earnings. *See Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013) (noting that "[a]n award that fails to make the plaintiff whole due to an inadequate compensation for her lost use of money frustrates the purpose of ERISA's remedial scheme"); *Perez v. City Nat'l Corp.*, 231 F. Supp. 3d 593, 595 (C.D. Cal. 2017), *rev'd in part on other grounds*, *Acosta v. City Nat'l Corp.*, 922 F.3d 880 (9th Cir. 2019) (identifying "the Plan's rate of return, which reflects the fluctuation of the Plan during the relevant time period" as the correct measure to remedy a breach of fiduciary duty). Defendants' calculation appears to under-compensate plaintiff; and plaintiff, for her part, has not presented evidence showing what the correct calculation of her damages would be. If the parties are unable to agree on the amount, the Court shall make this determination at trial.

Plaintiff's age discrimination claims must proceed to trial as well. Plaintiff has produced significant, direct evidence of age discrimination, including Rodriguez's many ageist comments directed to plaintiff and to "old" or "older" people generally. For example, plaintiff

---

[1] Defendants indicate that on August 5, 2019, they "submitted an application to the United States Department of Labor's Voluntary Fiduciary Correction Program ('VFCP') [and that] all of the administrative fees that were charged to the Plan . . . during the 2015, 2016 and 2017 Plan years, plus lost earnings using the . . . VFCP Online Calculator amounting to a total of $210,579.28, were voluntarily returned to the Plan." Defs.' Summ. J. Br. at 24. This does not explain how defendants determined, whether by using this online calculator or otherwise, that plaintiff's "applicable lost earnings" amounted to $3,213.08.

4

testified that Rodriguez told plaintiff that she "couldn't hire old people, black women, or smelly people," and that after plaintiff turned 50 years old he "continuously" joked about her age and about her ankle and shoulder injuries he attributed to her age. Pl.'s Dep. at 150-54, 174-75. Further direct evidence of age-related discriminatory animus is Rodriguez's policy, which he announced at a company-wide meeting in 2016, requiring employees to retire at age 59-1/2. Rodriguez Dep. at 229-31; Pl.'s Dep. at 147-48. Plaintiff testified that Rodriguez told her that he instituted this policy so that he could avoid having to deal with "older employees who had been there for a long time [and] were losing their memory." Pl.'s Dep. at 181. Plaintiff told Rodriguez that this policy was unlawful, but he dismissed her concerns "because she's not a licensed lawyer," and he did not abandon the policy until he was served with the instant lawsuit. Rodriguez Dep. at 233, 237. Obviously, such a policy is unlawful on its face.

Nonetheless, a jury must decide whether defendants discriminated against plaintiff because of her age, caused her work environment to be hostile on this basis, or retaliated against her because of her opposition to the mandatory retirement age policy. Plaintiff testified that she resigned in February 2018 (at age 57) days after she discovered that Rodriguez had reduced her salary by nearly 40%. Immediately prior to Rodriguez making this reduction, he reminded plaintiff at a year-end meeting in December 2017 that "it's getting close to your retirement time [and] [y]ou've got to start looking for your replacement." Pl.'s Dep. at 142. Rodriguez admits that he "let her know . . . that she'd be done at the end of that two-year period." Rodriguez Dep. at 145. But the large salary reduction was due, according to Rodriguez, to plaintiff's poor work performance. *Id.* at 124-26. Rodriguez testified that plaintiff had "checked out" and was doing a "sucky ass job," *id.* at 126, a claim plaintiff denies. *See* Pl.'s Dep. at 141; Pl's Resp. Ex. 7. A jury must resolve the factual

5

dispute concerning Rodriguez's motivation in reducing plaintiff's salary. A jury will also determine whether Rodriguez's ageist comments and retirement policy subjected plaintiff to a hostile work environment. Accordingly,

IT IS ORDERED that the parties' cross motions for summary judgment are denied.

IT IS FURTHER ORDERED that defendants' motion for leave to file a reply brief in excess of seven pages is granted.

Dated: October 23, 2019  
    Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE